Law Offices of Beles & Beles
Anne C. Beles Bar No. 200276
Robert J. Beles Bar No. 41993
One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642
Tel No. (510) 836-0100
Fax. No. (510) 832-3690

Attorneys for *Defendant Russell Pfiester*

# United States District Court
## Northern District of California
### Oakland Courthouse

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br>vs.<br><br>RUSSELL PFIESTER,<br><br>*Defendant.* | No. **4:13 CR00304**<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date: Thursday, July 24, 2014<br>Time: 2:00 pm<br>Courtroom: 1 - 4th Floor, Honorable Yvonne Gonzalez Rogers |

## SENTENCING MEMORANDUM

### 1. Summary

Defendant Pfiester was indicted on May 9, 2013 on two counts: one of 18 U.S.C. 2252(a)(2), receipt of child pornography and one of 18 U.S.C. 2252(a)(4)(B), possession of child pornography. This Indictment arose from an investigation by the Department of Homeland Security that resulted in a search of Mr. Pfiester's home and computers on June 15, 2012. Mr. Pfiester was arrested on May 12, 2013. He was later released from custody and returned to his mother's home. Upon his plea of guilty, he returned to custody.

Mr. Pfiester entered a plea agreement with the Government and pleaded guilty to one count of receipt of child pornography, 18 U.S.C. §2252(a)(2) on February 6, 2014. The Plea

1
Defendant's Sentencing Memorandum

Agreement, filed pursuant to Rule 11 (c)(1)(C), the defendant and the Government agree that an appropriate sentence would not be less than 60 months, nor more than 97 months. The Agreement further sets the adjusted offense level at 30, and with Mr. Pfiester's Criminal History Category I, the United States Sentencing Guidelines call for a range of 97-121 months. The Office of Probation, in a well-prepared and thorough Presentence Report, recommends a 97 month sentence. The defense believes that a 60 month sentence is appropriate, given the factors outlined in 18 U.S.C. §3553(a).

### 2. Sentencing Factors under section 3553(a)

#### a. Introduction

Following the decision in *United States v. Booker*, 543 U.S. 220, 232, 125 S. Ct. 738, 749, 160 L. Ed. 2d 621, 643 (2005), the guidelines are considered advisory only. This court exercises its discretion under the sentencing factors in 18 U.S.C. section 3553(a), and the defendant is not required to show that his particular situation is inadequately addressed by the guidelines. In imposing sentence:

> "Although we 'consider the totality of the circumstances, including the degree of variance for a sentence imposed outside the [g]uidelines range,' extraordinary circumstances are not needed to justify a sentence outside the guidelines range."

*United States v. Ruff*, 535 F.3d 999, 1002 (9th Cir. 2008), quoting *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc.) The sentencing court determines whether the sentencing factors warrant a particular variance. *Id.* While the court considers the degree of variance, "courts should not quantify variances from the guidelines 'as a certain percentage of the maximum, minimum, or median prison sentence recommended by the [g]uidelines' because this 'gives no weight to the "substantial restriction of freedom" involved in a term of supervised release or probation." *United States v. Ruff*, 535 F.3d at 1003-1004, quoting *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 595, 169 L. Ed. 2d 445 (2007.)

*Kimbrough v. United States*, 128 S. Ct. 558 (2007), which dealt with overstated guideline sentences regarding crack cocaine as opposed to powder cocaine, held that when a particular guideline "do[es] not exemplify the Commission's exercise of its characteristic institutional role,"

it is permissible for a sentencing court to conclude that the Guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." *Kimbrough*, 128 S. Ct. at 575.  Several courts have since applied *Kimbrough's* reasoning to the child pornography guidelines.

Section 2G2.2 differs from most other guidelines in that the upward modifications were not the result of empirical studies by the Sentencing Commission indicating that the increases were necessary, but largely the result of congressional directives requiring the Commission to make these upward modifications:

> "[T]hese changes [were] largely the consequence of numerous morality earmarks, slipped into larger bills over the last fifteen years, often without notice, debate, or study of any kind. Congressionally mandated changes were even enacted to prevent the Commission from implementing carefully considered modifications which would have lowered applicable offense levels."

*United States v. Hanson*, 561 F.Supp.2d 1004, 1009 (E.D. WI 2008), the Hanson court also noting that the amendments "destroyed some of the careful distinctions the Commission had drawn between true peddlers of child pornography and more simple possessors or transporters." *United States v. Hanson*, id.  See also *United States v. Johnson*, 588 F. Supp. 2d 997 (S.D. IA 2008), *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. IA 2008) ("These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."), *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. OH 2008), *United States v. Baird*, 580 F. Supp. 2d 889 (D. NE 2008), *United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. WI 2009), *United States v. Jacob*, 599 F. Supp. 2d 1037 (N.D. IA 2009), *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. IA 2009), *United States v. McElheney*, 630 F. Supp. 2d 886 (E.D. TN 2009), *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. FL 2009.)

The statutory sentencing factors under section 3553 (a) are extensively discussed in *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), an appeal from a sentencing occurring in October of 2007 and, more recently, in *United States v. Edwards* (9th Cir. February 16, 2010). Autery was a child pornography possession case in which the Ninth Circuit upheld a sentence

3
Defendant's Sentencing Memorandum

of straight probation over a guideline sentence of 41-51 months; Edwards, a bank fraud case in which the Ninth Circuit followed Autery and imposed a sentence of straight probation rather than a guideline sentence of 27-33 months. The 3553 (a) factors are as follows:

"(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [and recommended by the Guidelines] . . . ;

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense."

### b. Nature and circumstances of the offense

The receipt and possession of child pornography arises from different scenarios for different defendants. Mr. Pfiester used child pornography at a low point in his life, for a limited period of time and in response to, or conjunction with, his own unresolved mental health issues stemming from past trauma.

As explained in the Presentence Report, Mr. Pfiester was unemployed and unmedicated for depression and post traumatic stress. Mr. Pfiester had become a compulsive user of adult pornography and then crossed the line into child pornography. He views this, now, as a form of self abuse – in that he knew that it was wrong, given his own history, and that the viewing of such horrors "proved" his own distorted self-loathing perceptions.

Mr. Pfiester, unlike many defendants charged with child pornography, used child porn for a limited period of time. He cannot recall exactly when he began, but estimates that it was approximately six months before the search warrant was served in June 2012. He believes that it may have started in late 2011 or early 2012. This is in stark contrast to many defendants who have compulsively viewed child porn over years and amassed vast stores of such material.

Mr. Pfiester's use of child porn is inextricably connected to the sexual abuse of his sister that he witnessed and his own abuse. Mr. Pfiester has long held extraordinary guilt and shame for the inability to save his sister from sexual abuse. Though seemingly illogical, Mr. Pfiester viewed child porn in an attempt to further punish himself for what he perceived as a failure to help his sister. This is not to say that the viewing was entirely mental self-flagellation. Mr. Pfiester readily admitted to the agents at the time of the search warrant, that he indeed had masturbated to such images. However, Mr. Pfiester, unlike many child porn defendants, viewed the material in connection with his own history and for a reason other than pure self pleasure. This is unusual in that many child porn defendants view the material solely to please themselves and not as an outgrowth of prior trauma. As explained further below, Mr. Pfiester has gained enormous insight into his viewing of child porn through therapy and his faith since the search warrant service in June 2012.

### c. History and characteristics of the defendant

Mr. Pfiester completely lacks any criminal history. The complete lack of a criminal history is not contained in the guidelines' calculation of a Criminal History of 1, since this category includes both individuals with minor criminal history and those with none at all. Accordingly, it is proper for this court to consider defendant's complete lack of a criminal history as a mitigating factor. The Ninth Circuit noted that the Fifth Circuit had reached the same conclusion, upholding a sentence of straight probation for a defendant with no criminal history convicted of possessing defendant convicted of possessing "hundreds of hardcore child pornography images." *United States v. Autery*, 555 F.3d at 873, citing *United States v. Rowan*, 530 F.3d 379, 381 (5th Cir. 2008.) The Ninth Circuit also upheld the district court's reliance on

Autery's positive psychological characteristics, similar to defendant here, and the fact that Autery did not fit the profile of a pedophile. *United States v. Autery*, 555 F.3d at 875. The Ninth Circuit found the district court's finding reasonable that each of those attributes increased the likelihood that Autery can again become a productive, non-threatening member of free society, thus making more severe punishment less appropriate than if Autery lacked those characteristics. As *Autery* approved a sentence of sentence of straight probation, defendant's similarity shows that a 60 month sentence would be adequate.

U.S. Probation Officer Monica Romero conducted a thorough and detailed investigation into Mr. Pfiester and the offenses. The Presentence Report relates much of the history and characteristics of Mr. Pfiester. This Memo will only address some of the history and characteristics, with an emphasis on the post-offense, pre-plea conduct of Mr. Pfiester.

Mr. Pfiester now views the search warrant in June 2012, and his later arrest in May 2013, as appropriate, positive and welcomed events. That fact alone puts Mr. Pfiester outside of the typical child porn defendant.

After the search warrant, Mr. Pfiester went into a deep depression and was hospitalized for suicidal thoughts. His wife, Gloria Pfiester, asked that he leave the family home after the warrant was served, and Mr. Pfiester went to his mother's house. This began the process of healing for him – it got him into therapy and back onto necessary medication. He began behavioral therapy with Dr. Candace Melton at St. Joseph's Behavioral Health Center and continued regularly until his was incarcerated upon his plea of guilty. He also was treated by Dr. John Yarborough (a psychiatrist) who monitored and adjusted his psychotropic medication.

Mr. Pfiester also renewed, or "began", in his words, his Christian faith. He has attended church regularly and it has had an enormous impact on his approach to therapy, addictions and his life, in general. Mr. Pfiester does not proclaim his faith in order to receive any benefit, from this Court, or anyone else. He does, however, use his faith to better understand his wrong actions and uses it to move forward "in peace."

Mr. Pfiester has dictated a letter of apology to defense counsel, and reviewed it via

telephone after it being typed. This letter, as well as letters from family, will be attached to this Sentencing Memo. Mr. Pfiester's letter of apology and acceptance of responsibility also puts him well outside the norm of child porn defendants, and merits a variance from the Guideline range. He is extremely remorseful about his actions. He also shows insight into his crime and the effects on those sexually abused.

This Sentencing Memorandum could not put Mr. Pfiester's biography or personal feelings about the offense any better than the Probation Officer and he, himself, did in his letter to the Court. We can here argue that the history and the characteristics of Defendant Pfiester put him outside the norm of child porn defendants and merit a variance from the Guideline range.

### d. Seriousness of the offense, respect for the law, just punishment, deterrence, need to protect the public, and unwanted sentencing disparities.

The Ninth Circuit in Autery found that the district court adequately considered this factor by imposing the maximum term of probation because of the seriousness of the offense, plus conditions of probation, which included registration as a sex offender, therapy, a five year restriction from traveling outside of the state, and a ban from the internet, outside of work without prior approval. *United States v. Autery*, 555 F.3d at 875. Defendant has similar conditions plus he will have to serve a minimum of 60 months in prison.

Defendants charged with straight possession of child pornography in this jurisdiction are receiving sentences comparable to the 60 month sentence defendant has requested. While counsel does not have the advantage of the government in being able to select examples from all of the criminal cases filed in the Northern District, defendant offers the following as comparables:

> Growney, 11-CR-00195-CRB: Defendant was originally charged with possession of child pornography but pled to a reduced charge of destruction of evidence to avoid seizure under 18 U.S.C. section 2232(a). He received a sentence of supervised release with a home detention-electronic monitoring condition.
>
> Fulcher, 11-CR-00280-CW Defendant pled to a single count of possession of child pornography, 51 months.
>
> Bursch, 11-CR-00644-PJH. Following trial on a single count of possession of child pornography, defendant received a sentence of 57 months.

Lacy, 08-00915-CW, Defendant pled to a single count of possession of child pornography, 57 months.

The major difference in these cases is that there was obviously no Rule 11(c)(1)(C) plea agreement that the defendant would be sentenced to a minimum of 60 months. Presumably, if there had been such agreements in these cases, the defendants would have all been sentenced to the minimum of 60 months since they received lesser sentences.

### 3. Conclusion

Given the nature and circumstances of the offense and the history and characteristics of the defendant, the defense believes that a 60 month sentence is sufficient, but not greater than that is necessary to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.

Dated: Oakland, California, Friday, July 18, 2014.

Respectfully submitted,

_____
Anne C. Beles
Attorney for *Defendant Russell Pfiester*